Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)

Page 2 of 10

FILED 22 NOV '21 10:44 USDC-ORP

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

| United States District Court | | District of Oregon | |
|---|---|---|---|
| Name<br>Jeremiah Kyle Blaber | | | Docket or Case No.:<br>6:21-cv-01691-JR |
| Place of Confinement:<br>Oregon State Hospital | | Prisoner (SID) No.:<br>23355384 | |
| Petitioner<br><br>Jeremiah Kyle Blaber | v. | Respondent  Oregon State Hospital<br><br>Dolores Matteucci, Supt. | |
| The Attorney General of the State:   Honorable Ellen Rosenblum | | | |

### CONVICTION UNDER ATTACK

1. Name and location of court that entered the judgment of  Involuntary Hospitalization
Multnomah County Circuit court
1021 SW 4th Aveave, Portland, OR 97204

2. Criminal docket or case number (if known): _____

3. (a) Date of judgment of involuntary hospitalization:  July 1, 2019

   (b) Date of sentence:_____

4. Length of Hospitalization  up to 3 years

5. Identify all crimes for which you were convicted and sentenced in this case:
   _____
   _____
   _____
   _____

6. What was your plea? (Check one)

   N/A
   [ ] Not Guilty                [ ] Guilty
   [ ] Nolo Contendere (No Contest)   [ ] Insanity Plea

   If you entered a guilty plea(s), list what crimes you pleaded guilty to, and what crimes you did not plead guilty to:
   I stated for the record that I was competent to stand trial.

7. If you pleaded not guilty, what kind of trial did you have? (Check one)

   N/A
   [ ] Jury                      [ ] Judge Only

8. Did you testify at hearings?

   [✓] Yes                       [ ] No

Corresponds to AO 241     Case 6:21-cv-01691-JR     Document 1     Filed 11/22/21     Page 2 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254                                          Page 3 of 10
(Rev. 1/20)

## EXHAUSTION OF STATE REMEDIES

### *DIRECT APPEAL*

9.     Did you directly appeal from the judgment of *Involuntary  Hospitalization*

☐ Yes                              ☑ No

a.     Name of court:_____

b.     Docket or case number (if known):_____

c.     Result:_____

d.     Date of result and citation (if known):_____

e.     Grounds raised:

_____
_____
_____
_____
_____

10.    Did you seek further review of the decision on appeal by a higher state court?

☐ Yes                              ☑ No

a.     Name of court:_____

b.     Docket or case number (if known):_____

c.     Result:_____

d.     Date of result and citation (if known):_____

e.     Grounds raised:

_____
_____
_____
_____
_____

11.    Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes                              ☑ No

Corresponds to AO 241 Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 3 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)

Page 4 of 10

a.  Docket or case number (if known): _____

b.  Result: _____

c.  Date of result and citation (if known): _____

d.  Grounds raised:
_____
_____
_____
_____
_____
_____

12.  If you did not directly appeal from the judgment of conviction, explain briefly why you did not:

I was unaware of what a Writ of Mandamus was until after the time had expired. However I did file a writ of mandamus after the sell order was amended because the clock restarted once med order was changed and I currently have a writ of Certiorari docketed with the US Supreme Court on the medication (sell) mandate, which I filed successfully pro se. Docket # 21-5855

**POST-CONVICTION RELIEF**

13.  Did you file a petition for state post-conviction relief?

☐ Yes          ☑ No

a.  Name of court: _____

b.  Docket or case number (if known): _____

c.  Nature of proceeding: _____

d.  Did you receive an evidentiary hearing?

☐ Yes          ☑ No

e.  Result: _____

f.  Date of result and citation or case number (if known): _____

g.  Grounds raised:
_____
_____
_____
_____
_____

14.  Did you appeal the result of your state post-conviction case?

☐ Yes          ☑ No

Corresponds to AO 241    Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 4 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)

Page 5 of 10

    a.    Name of court: _____

    b.    Docket or case number (if known): _____

    c.    Result: _____

    d.    Date of result and citation (if known): _____

    e.    Grounds raised:

        _____
        _____
        _____
        _____
        _____
        _____

15.    Did you seek further review of the decision on appeal by a higher state court?

              ☐ Yes               ☑ No

    a.    Name of court: _____

    b.    Docket or case number (if known): _____

    c.    Result: _____

    d.    Date of result and citation (if known): _____

    e.    Grounds raised:

        _____
        _____
        _____
        _____
        _____
        _____

16.    If you did not appeal from the adverse decision in your state post-conviction case, explain briefly why you did not: **N/A**

_____
_____
_____
_____
_____
_____

### GROUNDS FOR RELIEF

17.    For this petition, state *concisely* every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    **CAUTION: In order to proceed in the federal court, normally you must exhaust (use up) your available state court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

    For your information, the following is a list (a-j) of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise grounds other than those listed.

Corresponds to AO 241    Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 5 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)                                                                                    Page 6 of 10

a.    Conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

b.    Conviction obtained by use of coerced confession.

c.    Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

d.    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

e.    Conviction obtained by a violation of the privilege against self-incrimination.

f.    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

g.    Conviction obtained by a violation of the protection against double jeopardy.

h.    Conviction obtained by action of a grand or petit jury that was unconstitutionally selected and impaneled.

i.    Denial of effective assistance of counsel at trial or on appeal.

j.    Denial of right of appeal.

**A.    Ground One:**

The court signed an order declaring Mr. Blaber unfit to proceed under ORS 161.370 prior to hearing.

**Supporting FACTS**

On 7/1/19 Judge Benjamin Johnston signed a ORS 161.370 order finding defendant unable to aid and assist in part on: defense counsel's representation; the court's inquiry and observation of defendant at hearing.

The hearing took place on 7/2/19

**B.    Ground Two:**

Mr. Blaber's treating Physician does NOT feel he has a mental illness

**Supporting FACTS:** Sell order Pg 2: " on June 10, 2020, Dr. Christianson emailed Dr. Ingram to tell her he no longer supported a Sell hearing because he no longer believed defendant had a mental illness and his belief defendant was trial competent.

From Sell order pg 3: When Dr Christianson testified in November 2020, he said he had become more convinced since his August testimony that defendant does not suffer from a mental illness.

Corresponds to AO 241 Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 6 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)

Page 7 of 10

**C.**     **Ground Three:**

_____

_____

_____

      **Supporting FACTS (state _briefly_ without citing cases or law):**

_____

_____

_____

_____

_____

_____

_____

_____

_____

**D.**     **Ground Four:**

_____

_____

_____

      **Supporting FACTS (state _briefly_ without citing cases or law):**

_____

_____

_____

_____

_____

_____

_____

_____

_____

## OTHER INFORMATION

18.   Please answer these additional questions about the petition you are filing:

    a.     Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

       ☐ Yes                   ☑ No

       If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: I was unaware of what a Mandamus writ was, by the time I found out and learned how to file one, the 90 days had expired to file a timely petition.

_____

_____

Corresponds to AO 241 Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 7 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)                                                                                                    Page 8 of 10

b.     Is there any ground in this petition that has not been presented in some state or federal court? If so, indicate which ground or grounds have not been presented, and state your reasons for not presenting them:

_____N/A_____

_____

_____

_____

_____

_____

19.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, state or federal, for the judgment you are challenging here?

☐ Yes                   ☑ No

If the answer is "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:

_____

_____

_____

_____

_____

_____

20.    Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

a.    At ORS 161. 370 Hearing:

_____Josh P. McCarthy     208-310-6729     OSB # 084156_____
630 SW 5th Avenue
Portland, OR 97204

b.    At arraignment and plea:
_____Dylan SR Potter_____
_____630 SW 5th Avenue_____
Portland, OR 97204

c.    At trial:

_____

_____

d.    At sentencing:

_____

_____

e.    On appeal:

_____

_____

f.    In any post-conviction proceeding:

_____

_____

Corresponds to AO 241 Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 8 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254                                                                 Page 9 of 10
(Rev. 1/20)

g.  On appeal from any adverse ruling in a post-conviction proceeding:

_____

_____

21.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

☐ Yes          ☑ No

a.  If yes, in what court was the prior action filed? _____

b.  What was the prior case number? _____

c.  Was the prior action:          ☐ Decided on the merits, or

☐ Dismissed on procedural grounds

d.  Date of decision: _____

e.  Are there any issues in this petition raised in the prior petition?

☐ Yes                              ☐ No

f.  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this successive petition?

☐ Yes*                              ☐ No

*If the answer is "Yes," you *must* attach a copy of the order received from the Ninth Circuit Court of

Appeals.

22.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes          ☑ No

a.  If so, give the name and location of the court that imposed the sentence to be served in the future:

_____

b.  Give the date and length of sentence to be served in the future:

_____

_____

c.  Have you filed, or do you contemplate filing, any petition attacking the judgment that imposed the sentence to be served in the future?

☐ Yes          ☑ No

Corresponds to AO 241 Case 6:21-cv-01691-JR    Document 1    Filed 11/22/21    Page 9 of 27
Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254
(Rev. 1/20)

Page 10 of 10

23.    TIMELINESS OF PETITION:  If your judgment of conviction became final over one year ago, you must
explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition:

While one of my arguments relates to an order of
commitment signed over a year ago. My last evaluation
for trial competency was only six months ago. It is every
six months until end of jurisdiction in July 2022.

24.    Date you are mailing (or handing to correctional officer for mailing) this petition to the Court:*

7/17/21

**WHEREFORE**, petitioner prays that the Court will grant such relief to which he or she may be entitled in this
federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody.

_____
Signature of Attorney (if any)

## DECLARATION UNDER PENALTY OF PERJURY

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

7/15/21
_____
Date                                           Signature of Petitioner

* As noted in the instructions to this form (at #8), if you are incarcerated at Snake River Correctional Institution (SRCI) or
Two Rivers Correctional Institution (TRCI), you must comply with the requirements of the E-Filing Program posted at the
institution and set forth in Standing Order 2019-7 (for SRCI) or 2019-12 (for TRCI).  Accordingly, you must submit your
filings in this case to prison staff for scanning and electronic submission, instead of mailing the filing using the U.S. Postal
Service.  Please indicate the date you submitted this petition to prison staff for scanning and electronic submission.

Memorandum in support
of Writ of Habeas Corpus

Jeremiah K Blaber
vs.
Oregon State Hospital
Dolores Mattevcci, supt.

In the circuit court of
Oregon, county of multnomah

Legal case # 19CR32657

Please see attached

Statement of facts; Argument; and Exhibits A-E

1   Mr. Blaber was arrested on an Assault II charge which is a class B felony. Mr. Blaber was also charged with lesser felonies and misdemeanors steming from 5/18/19 arrest

2   On 7/1/2019 circuit court Judge Benjamin Johnston signed a ORS 161.370 order commiting Mr. Blaber to Oregon State Hospital for competency restoration. Based in Part of his honor's observation and inquary of Mr. Blaber. (Exhibit A)

3   On 7/2/2019 ORS 161.370 competency hearing takes place. (Exhibit B)

4   In August and November of 2020 the State asked the court to decide if Mr. Blaber had a mental illness based on Dr. Christianson's testimony (Exhibit D pg 2+3) that he did not believe Mr. Blaber had a mental health disorder and was mentally competent.

5   Dr. Christianson also authored a letter to the state after evaluator found Mr. Blaber never able w/o mediation, that a medication order would not be sent because if would not be appropriate under ORS. 161.372 (Exhibit C)

6   A Sell order was issued by the court in December 2020 after the State determined Mr. Blaber "did have a mental health disorder." Against the opinion of Mr. Blaber's treating Physician.

7   Mr. Blaber continued to refuse medications until an amended Sell order was issued that

provided for IM back ups of medications.

8. Mr. Blaber became aware of a writ of mandamus procedures and filed one against the amended Sell order.

9. Mr. Blaber filed a writ of Mandamus in Oregon Supreme court on 4/16/2021 but was only able to challenge the medication order because it had been more than 90 days from the first Sell order were the competency issue was taken up (December 2020)

Argument pg 2

This writ should be granted first and foremost because I am of sound mind and do not have a mental health disorder. This is not just my opinion but the opinion of my treating Physician that the State put in charge of my direct care for the purpose of restoration to competency.

Excerpt of Exhibit D, pg 3 : "When Dr. Christenson testified in November, he said he had become more convinced since his August testimony that defendant does not suffer from a mental illness."

Excerpt from Forensic evaluator Exhibit D, pg 3 : "In her evaluation of defendent, Dr. Ingram found defendent to have good knowledge of the adversarial legal system, trial process, the various options for resolution of his cases, his rights and possible sentences."

There is no medical reason to be at Oregon State Hospital. My treating Physician not only feels that I don't suffer from a mental health disorder but also that medication is unlikely to have any effect (Exhibit C) on competency restoration. Dr. Christenson declined to even author a medication list to the court because the standards codified in Sell and Lopes adopted by the Oregon State legislature were not met. ORS 161.372 requires a Substantial likelyhood, and I respectfully submit to this court, the state did not even come close in proving that requirement. A substantial likelyhood medication will restore competency can not be met when the treating Physician is unsure there is even a disorder to treat.

Argument 2 of 2

You can not hospitilize someone in this country against their will because you disagree with their legal strategy at trial. I successfully had a writ of certiorari docketed with the United States Supreme court, (Exhibit E) and I did so without any help. It is nonsensical to say I am unable to aid and assist in my own defense.

This writ should be granted because the Judge signed the commitment order before the hearing even took place. I found this out after reviewing the documents in my case. I respectfully submit this is another example of being able to look at evidence and discovery and assist in my own defense.

My right to a fast and speedy trial has been taken from me. As I write this I have been in custody 915 days. My life and legal case in limbo, I ask this court to allow me to move forward with both by granting this petition.

*Exhibit A*

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

### FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| STATE OF OREGON<br>Plaintiff, | CASE NO: _19CR32657_ |
| | DA NO: _2402774-1D_ |
| v. | **ORDER** FINDING THE DEFENDANT<br>UNABLE TO AID AND ASSIST AND<br>ORDER TO TRANSPORT **IN**<br>**CUSTODY** DEFENDANT TO THE |
| _Jeremiah Kyle Blaber,_<br>Defendant. | OREGON STATE HOSPITAL FOR<br>TREATMENT (ORS 161.370) |
| DOB: _10/06/87_<br>SID: _23355384_ | |

This matter came before the Honorable <u>Nan Waller</u> for a determination of the defendant's fitness
to proceed pursuant to ORS 161.370.

The defendant appeared in custody, with counsel <u>J. McCarthy</u>, OSB # <u>084156</u>, and the State
appeared through <u>B. Stabeno</u>, OSB # <u>144369</u>. *Never Met or talked to prior to court appearance*

The Court finds that defendant is charged with the following offenses (listed in order of
seriousness by crime classification):

| Crime Name: | Crime ORS#: | Felony/Misdemeanor: | Maximum Sentence: | Booking Date: |
|---|---|---|---|---|
| 1. | Assault in the Second Degree | FB | 10 years | 05/18/19 |
| 2. | Unlawful Use of a Weapon | FC | 5 years | 05/18/19 |
| 3. | Attempt to Commit Class B Felony | FC | 5 years | 05/18/19 |
| 4. | Unlawful Use of a Weapon | FC | 5 years | 05/18/19 |
| 5. | Unlawful Entry into a Motor Vehicle | MA | 1 year | 05/18/19 |
| 6. | Attempt to Commit Class C Felony | MA | 1 year | 05/18/19 |
| 7. | Attempt to Commit Class C Felony | MA | 1 year | 05/18/19 |
| 8. | Criminal Mischief in the Second Degree | MA | 1 year | 05/18/19 |
| 9. | Disorderly Conduct in the Second Degree | MB | 6 months | 05/18/19 |

Based on the Court's review and consideration of:

    X Pursuant to ORS 161.365(2), the report of certified evaluator <u>Dr. Alexander Millkey</u>
    dated <u>06/17/19;</u>
    X The Court's inquiry and observation of defendant at the hearing;
    X The defense counsel's representation;
    ☐ Other information provided, to wit: _____

*S. Judge day before hearing*

THE COURT FINDS the defendant lacks the fitness to proceed as defined by ORS 161.360(2)
and:

    ☐ is a danger to self or others in the community, and/or

8.     If the Superintendent determines that defendant is no longer dangerous to self or others, or that the supervision and services necessary to restore defendant's fitness to proceed are available in the community, the superintendent shall file notice of that determination with the court.

9.     The notices and reports and updates of the examination and/or defendant's progress in treatment shall be filed electronically in the Oregon Judicial Department's Ecourt system with the Clerk of the Court for Multnomah County.

10.    In addition, OSH shall provide Multnomah County Mental Health Department with its reports and updates regarding defendant for continuity of care purposes.

11.    Pursuant to **ORS 161.370(7)(a),** A defendant commitment to Oregon State Hospital (OSH) shall be equal to the maximum sentence the court could have imposed if the defendant had been convicted or three (3) years, whichever is less. Also, HB 2308 (2017) requires the court to give credit for time in jail to defendants not charged with a crime listed in ORS 137.700(2).  This defendant ___ is/is not X charged with a crime listed in ORS 137.700(2).

Therefore:
   a.  The maximum commitment to OSH while unable to aid and assist is:
      i.  X      3 years (if charges are Felony C, B, or A), or
      ii. ☐      1 year (Misdemeanor A), or
      iii. ☐     Other ____ (maximum of pending charges)
   b.  The effective date for calculating this legal status is:
      i.  ☐      Date committed to OSH (date order signed)_____, or
      ii. X      Date of arrest/booking as of 05/18/19 or
      iii. X     Date committed to OSH subtracting/giving credit 46 days of confinement as of order signed.

(Court relies upon the date provided by the Multnomah County Sheriff's Department records for calculation of time in custody since initial booking date.)

12.    The proceedings against the defendant are hereby suspended, except as provided for in ORS 161.370(13), but if the court determines that defendant has regained fitness to proceed, the criminal proceeding may be resumed pursuant to ORS 161.370(4).

13.    Further proceedings are set for hearing in Courtroom _JC2_ on _12/31/19_ at _pending hospital._

Dated: _07/01/19_

                                                          Judge Benjamin Johnston

Defense attorney name, address, email address & phone number:

 Dylan Potter                                    DDA Name:  Brendan Stabeno
 630 SW 5th Ave #500                              DDA Email: brendan.stabeno@mcda.us
 Portland, OR 97204                               Case No: _19CR32657_
 503-225-9100

dpotter@mpdlaw.com

Page 3 of 3    Original to: Court / Copies to: Jail/OSH/Defendant/Defense Attorney/District Attorney/Judge
(Form 23-27C) (3/11)

IN THE CIRCUIT COURT OF THE STATE OF OREGON        *Exhibit B*
FOR THE COUNTY OF MULTNOMAH
1021 SW 4TH AVENUE, PORTLAND OR 97204

STATE OF OREGON                                    Case No.  19CR32657
                        Plaintiff

                                                   **ORDER**
        v.
                                                   Date of Hearing:  7/02/19
Jeremiah Kyle Blaber
                        Defendant

District Attorney  Stabeno     Bar No.  144369  Reporter  FTR/clerk
Defense Attorney   McCarthy    Bar No.  084156

Based off of the evaluation of Dr. Alexander Millkey dated 6/17/19, the defendant has been found unable to assist.

The defendant is to be transported to the OSH under a 161.370 TTF Order.

Tuesday 7/2

7/02/19
Date

Day of Hearing

_____
Circuit Court Judge

Benjamin Johnston
Name of Judge (Typed or Printed)

23-22   (12/16)   Original: Court   Copies – Judge/Jail/Defense Atty/District Atty.

July 29, 2020

*Exhibit C*
*C*

The Honorable Nan G Waller and Benjamin Johnston
Multnomah County Circuit Court
Multnomah County Courthouse
1021 SW 4th Ave
Portland, OR 97204

RE:    Jeramy (Jeramiah) Blaber, DOB 10/6/87, CASE NUMBER 19CR32657
       OSH#: 87726

Dear Judge  Waller and Johnston:

A psychological evaluation was performed by the Oregon State Hospital's Forensic Evaluation Service for Jeramy (Jeramiah) Blaber, DOB 10/6/87, CASE NUMBER 19CR32657 and was filed on 7/1/2020 finding the defendant unable to aid and assist without an order for involuntary medication. It is the opinion of the defendant's treating physician that an order for involuntary medications does not have a substantially likelihood to allow the defendant to gain or regain fitness to proceed, and therefore, pursuant to ORS 161.372 an involuntary medication report will not be filed.

Please feel free to contact the treating Psychiatrist or Psychiatric Mental Health Nurse Practitioner below for more information.

Sincerely,

| _Les Christianson_ | Les Christianson, DO | 503 602 9974 | 7/29/2020 |
| --- | --- | --- | --- |
| Signature of treating Psychiatrist/PMHNP | Print/Type name | Phone Number | Date |

Exhibit D

## IN THE CIRCUIT COURT OF THE STATE OF OREGON
### FOR THE COUNTY OF MULTNOMAH

STATE OF OREGON )    CASE NO: 19-CR-32657
)    DA NO: 2402774-1D
)
Plaintiff, )    *SELL* ORDER AUTHORIZING THE
)    INVOLUNTARY ADMINISTRATION
)    OF MEDICATIONS FOR THE
v. )    PURPOSE OF RESTORING
)    DEFENDANT'S TRIAL COMPETENCE
)
JEREMIAH KYLE BLABER )
Defendant. )

This matter came before Judge Nan Waller on five separate dates: August 18, November 9, 10, 23, and December 7, 2020, for a determination of whether the State may involuntarily administer medications to Defendant for the purpose of restoring Defendant's trial competence in relation to the below charges. Defendant appeared with counsel, Dylan Potter (OSB 104855). The State was represented by Deputy District Attorney Melissa Marrero (OSB 123846).

The defendant is charged with the following offenses:

| | Crime Name: | Felony/Misdemeanor: | Class: | Incident Date: |
|---|---|---|---|---|
| 1. | Assault II | Felony | B | 5/18/2019 |
| 2. | Unlawful Use of a Weapon | Felony | C | 5/18/2019 |
| 3. | Attempt to Commit Ass. II | Felony | C | 5/18/2019 |
| 4. | Unlawful Use of a Weapon | Felony | C | 5/18/2019 |
| 5. | UEMV | Misd. | A | 5/18/2019 |
| 6. | Att. To Commit Class C Fel. | Misd. | A | 5/18/2019 |
| 7. | Att. To Commit Class C Fel. | Misd. | A | 5/18/2019 |
| 8. | Crim Mis, II | Misd. | A | 5/18/2019 |
| 9. | Dis. Conduct II | Misd. | B | 5/18/2019 |

THE COURT FINDS BY CLEAR AND CONVINCING EVIDENCE:

Defendant has been at Oregon State Hospital (OSH) for over a year under an ORS 161.370 commitment order for restoration to competency. At the outset of the hearing the Court was asked by the State to decide whether Defendant even has a qualifying mental health disorder based upon an opinion of his treating psychiatrist, Dr. Les Christenson. Dr. Christenson testified that he does not believe that Defendant suffers from a delusional disorder and, therefore, is able to aid and assist.

Based upon the forensic evaluations of Defendant done over the course of this case (both the evaluation done that led to Defendant's commitment and the 3 evaluations conducted while Defendant has been at OSH) and the testimony of Dr. Ingram, the Court finds that Defendant

1

does have a qualifying mental health disorder (delusional disorder) and as a result is unable to aid and assist in his own defense.

In her evaluations and testimony, Dr. Ingram distinguished Defendant's conspiratorial beliefs from his delusional thought process. The former, she explains, are normative beliefs in some portion of the population, the latter are "evidenced by his abnormal conviction and preoccupation with the beliefs." Dr. Ingram evaluation 12/19/19, p. 5.

Dr. Ingram found that Defendant had good factual knowledge of court-related information but that Defendant's rational understanding of his case, his ability to work with his attorney, and make decisions in his case continue to be severely impacted by his delusion beliefs. Over the course of the evaluations Dr. Ingram conducted, Defendant has been consistent in reporting that the current charges were falsified by the government in order to prevent him from revealing his discoveries about the government. Defendant has questioned whether his lawyer and the Court are part of the conspiracy and has been firm in his belief that the charges are a hoax and that evidence that doesn't exist is further proof of the government's efforts to suppress his discoveries.

Dr. Ingram testified that during his OSH commitment Defendant has consistently refused medication because he does not believe that he has a mental illness. In her December 2019 evaluation, Dr. Ingram found that Defendant's symptoms that impair his ability to aid and assist were unlikely to remit without administration of antipsychotic medication.

On June 9, 2019, Dr. Ingram competed her 3rd evaluation of Defendant, prompted by an email on May 30, 2019, from Defendant's new psychiatrist, Dr. Les Christianson, asking that an early evaluation of Defendant be conducted because it was unlikely that Defendant would improve or be restored without forced medication. (Defendant had moved to a new unit on May 27, 2020, for administrative reasons and Dr. Christianson became his psychiatrist). Dr. Christianson had noted in Defendant's medical record on May 30, 2019, that Defendant "has no insight into his delusion…prognosis is poor unless pt returns to OSH on a *Sell* order for involuntary medication treatment for the sole purpose of trial competency restoration." Dr. Ingram Report 7/1/20, p. 3.

On June 10, 2020, Dr. Christianson emailed Dr. Ingram to tell her that he no longer supported a *Sell* hearing because he no longer believed Defendant had a mental illness. On June 26, 2020, Dr. Christianson wrote in Defendant's medical record that he believed Defendant had suffered a brief psychotic episode at the time of the event that led to the charges but that the delusions leading to the events were no longer active. He wrote that he believed Defendant to be trial competent.

Notwithstanding Dr. Christianson's opinion, in her report dated July 1, 2020, Dr. Ingram found in her 3rd competency evaluation of Defendant that he did have a qualifying mental disorder (delusional disorder, mixed persecutory/grandiose type). Dr. Ingram found that while Defendant's delusional beliefs are related to historical experiences, they remain active and impede his ability to aid and assist in his defense. Dr. Ingram found that without a court order for administration of involuntary medication, there was no substantial likelihood that Defendant would gain fitness to proceed within the foreseeable future.

2

19-CR-32657

When Dr. Christenson testified in November, he said he had become more convinced since his August testimony that Defendant does not suffer from a mental illness and that as a result, he would not administer involuntary medication if it was court ordered. It should be noted that Dr. Christenson did not conduct competency evaluations of Defendant and is not a certified evaluator.

The Court finds Dr. Ingram's testimony on the issues of Defendant's diagnosis and competency to be persuasive. Dr. Ingram is a Certified Forensic Evaluator and has conducted 3 forensic evaluations of Defendant over the course of a year. She has reviewed the original evaluation of Defendant conducted by Dr. Milkey, that was the basis for the Court's commitment to OSH for competency restoration.

In her evaluation of Defendant, Dr. Ingram found Defendant to have good knowledge of the adversarial legal system, trial process, the various options for resolution of his cases, his rights and possible sentences. She also found that Defendant had a clear understanding of the charges against him. However, with regard to the other two competency prongs she found that:

> "Mr. Blaber's delusional belief system continues to impact his rational appreciation of his legal circumstances. His entire understanding of the alleged events is based in his paranoid, grandiose, and religious beliefs surrounding that time period. He believes that he has been 'set up' by various unknown government entities and that his charges are 'falsified.' He noted that this was done to 'discredit' him or to 'silence' him. He further believes that his current finding of incompetency, and associated hospitalization, is also part of an effort to 'discredit' him. In this way, he believes he is still experiencing repercussions of the conspiracy against him. All his preferred and identified legal strategies are directly related to his delusional beliefs...... Despite reviewing the available evidence with him in detail during his last forensic evaluation, he continues to irrationally assert that there is additional exculpatory evidence available. He believes that the lack of this evidence is proof of the conspiracy against him. Hi[s] understanding of his legal case is based in his delusional belief system, dependence on irrational circumstantial evidence, as well as ideas of reference, confabulation, and magical thinking.
>
> The majority of the current evaluation was spent engaging Mr. Blaber in conversation about his beliefs and how they are connected to his current legal circumstances. He demonstrated no flexibility or willingness to consider other legal perspectives. He noted that his attorney has had similar conversations with him, and that he continues to believe that his attorney is working with the prosecution and is not working in Mr. Blaber's best interests.... He remained acutely delusional."

The Court also engaged in a colloquy with Defendant and allowed him to make a statement. While it is true that Defendant is articulate, pleasant, and knowledgeable about

the legal system, the Court is convinced from the evidence presented as well as the colloquy with Defendant that he does have a qualifying mental disorder that continues to render him incompetent.

The Court next turns to the *Sell* criteria.

The Court has authority to order forced medication for the purposes of restoring competency for a defendant if the court finds certain factors set out in *United State v. Sell*, 539 U.S. 166 (2003). The Oregon Supreme Court adopted the *Sell* factors in *State v. Lopes*, 355 Or. 72 (2014). The Oregon Supreme Court specifically made it clear that the factors are not to be balanced but are independent requirements each of which must be found true before involuntary medication of psychotropic drugs may be considered constitutionally permissible. The standard of proof is clear and convincing. The Oregon Legislature codified the *Sell* and *Lopes* criteria for the administration of involuntary medication in the context of competency proceedings in ORS 161.372:

    A) Involuntary medication is not otherwise authorized by law;
    B) There are important state interests at stake in the prosecution of the defendant;
    C) The recommended medication will significantly further the important state interests because:
        (i)It is substantially likely that medication will render defendant fit to proceed **and**
        (ii)It is substantially unlikely that the medication will cause side effects that will impair the
            fairness of the criminal proceeding
    D) Involuntary administration of medication is necessary to further the important state interests because there are no alternative, less intrusive treatments that would produce the same result as medication **and**
    E) Administration of the medication is medically appropriate because it is in the defendant's best medical interest in light of the defendant's medical condition.

The Court finds that the State has met its burden of proving each of the required factors for administration of involuntary medication of Defendant by clear and convincing evidence. The Defense concedes involuntary medication is not otherwise authorized by law for Defendant. Defendant has been committed to OSH for more than a year and there has been no progress in restoring him to competency despite his numerous individual sessions with his unit psychologist and treating psychiatrist and the participation in group sessions and classes Defendant has refused to take any antipsychotic medications. Defendant does not qualify for administration of involuntary medication under OSH's administrative process because in the hospital setting he does not present as a danger to himself or others. The Court finds that involuntary medication of Defendant is not otherwise authorized by law and that there is no less intrusive method to restore defendant to competency.

The Defense also concedes there are important state interests at stake as that has been defined in case law. Defendant is charged with nine crimes, the most serious is Assault II, a Class B Felony and a Measure11 charge. Both the nature of the charge, allegedly causing physical injury by means of a dangerous weapon, and the mandatory sentence of 70 months, as a Measure 11

4

charge, support a finding by clear and convincing evidence that the State's interest in prosecuting Defendant is serious.

The dispute in this case is whether there is clear and convincing evidence that it is substantially likely that medication will restore Defendant to competency and whether that medication is medically appropriate because it is in Defendant's best medical interest in light of his medical conditions. Given Dr. Christenson's position on administration of involuntary medication for Defendant, Dr. Ingram consulted with Dr. Farris, Director of Forensic Evaluation Services at OSH, on the administration of involuntary medication for defendant. Dr. Farris is a psychiatrist and a certified Forensic Evaluator. Although not Defendant's treating psychiatrist, Dr. Farris, as part of his consultation with Dr. Ingram, reviewed the evaluations of Defendant, other OSH records of Defendant, and the literature on the use of antipsychotic medication for restoration of individuals with delusional disorders.

Dr. Farris testified, based on his consultation, review of the records, experience as a psychiatrist and review of the research, that the only option left to attempt to restore Defendant to competency is administration of antipsychotic medication. Dr. Farris opined that administration of antipsychotic medication is substantially likely to render Defendant competent. Dr. Farris has prescribed medication for delusional disorders for patients who have been civilly committed with positive results. Dr. Farris testified that antipsychotic medication could assist Defendant by lessening the rigidity in his thinking concerning delusion that is a barrier to restoration. He testified that it would take approximately 2 to 3 months for Defendant to reach a therapeutic level of medication.  Beyond restoration to competency Dr. Farris testified that administration of antipsychotic medication will benefit Defendant's general wellbeing by reducing his anxiety.

At the hearing on November 23, 2020, the Court requested OSH arrange for Defendant to be examined by a psychiatrist at the Oregon State Hospital for a determination of whether antipsychotic medication is medically appropriate for Defendant to treat his delusional disorder and whether administration of medication is in Defendant's best medical interest in light of Defendant's medical conditions. Dr. Farris had reviewed Defendant's records but had not examined Defendant. Since Dr. Christenson testified that he would not administer medication to defendant if a *Sell* order is signed, the Court wanted to hear from a psychiatrist who examined Defendant on the efficacy of administration of involuntary medication for Defendant.

At the hearing on December 7, 2020, the Court heard testimony from Dr. Nanton, Interim Chief of Psychiatry at OSH. Dr. Nanton reviewed all of the forensic evaluations of Defendant, reviewed all of Defendant's medical records, and examined Defendant over 3 meetings. Dr. Nanton submitted a report dated December 3, 2020, outlining his recommendations. Dr. Nanton found that Defendant meets the criteria for a diagnosis of Delusional Disorder and that administration of antipsychotic medication is the appropriate treatment for the diagnosis. Dr. Nanton acknowledged that there has been controversy surrounding treatment of Delusional Disorder with medication given the small numbers of people in the studies.

However, given the data available, Dr. Nanton testified that medication does appear to be an effective restoration treatment for persons with Delusional Disorders. Dr. Nanton said that the research indicates medication has a 75% efficacy rate for persons with Delusional Disorder, this

5

is similar to the rate of restoration for schizophrenia. Based upon a review of the studies admitted and the testimony of all of the doctors who testified, including Dr. Christenson, the Court finds that administration of antipsychotic medication to Defendant is substantially likely to restore him to competency.

The Court further finds by clear and convincing evidence that it is substantially unlikely that side effects of the recommended medications will impair the fairness of the criminal proceedings. The Defense argues that the State has not met its burden to show that the recommended medications are in the best medical interest of Defendant given his medical condition. Dr. Nanton testified that "the primary indication for the use of medication is restoration of competency. Mr. Blaber's suffering is related to continued hospitalization and restriction of his freedom, and his impairment in the hospital setting is related to the trial process. For this reason the analysis of risk and benefit is necessarily directly informed by his incompetency to stand trial. The primary suffering to be alleviated is due to incompetency resulting to lack of freedom. Similarly, assessment of risk is limited by lack of time in the community to determine if symptoms might become more prominent in that setting. He is otherwise not in marked distress and is able to attend to his in-hospital daily needs without notable impairment."

Dr. Nanton did make some modifications of Dr. Farris's medication recommendations based upon Defendant's weight, hypertension, and risk of diabetes. Dr. Nanton does not find that olanzapine or clozapine are appropriate but does recommend aripiprazole as the first medication to try, risperidone as the next medication to try if aripiprazole is not successful in restoring Defendant and finally quetiapine as the third medication in the event that risperidone or aripiprazole fail to restore Defendant to competency. Based upon Dr. Nanton's testimony the Court finds that it is in Defendant's best medical interest to be restored through the administration of antipsychotic medication.

Based on the Court's findings, it is therefore ORDERED:

1.  While committed to the custody of the superintendent of OSH pursuant to ORS 161.370, OSH may involuntarily administer the following medication or class of medications for purposes of restoring the Defendant's competency to stand trial in the listed order:

| Medication Name | 1)  Abilify / Aripiprazole (generic) |
|---|---|
| Recommended Maximum | 60 mg/day |
| Route of Administration | Oral |
| Purpose | To treat symptoms of delusional disorder |
| Potential Side Effects: | Insomnia, restlessness, akathisia, weight gain, headache, Parkinsonism, and dyskinesias (including tardive dyskinesia), Neuroleptic malignant syndrome and QTc prolongation |

| Medication Name | 2)  Risperdal / Risperidone (generic) |
|---|---|
| Recommended Maximum | 16 mg/day |
| Route of Administration | Oral |
| Purpose | To treat symptoms of delusional disorder |
| Potential Side Effects: | Weight gain, elevated heart rate, galactorrhea, cholesterol/triglycerides, akathisia, Parkinsonism, and dyskinesias (including tardive dyskinesia), Neuroleptic malignant syndrome and QTc Prolongation |

| Medication Name | 3)  Seroquel / Quetiapine (generic) |
|---|---|
| Recommended Maximum | 1200 mg/day |
| Route of Administration | Oral |
| Purpose | To treat symptoms of delusional disorder |
| Potential Side Effects: | Dry mouth, headache, weight gain, elevated heart rate, elevated cholesterol/triglycerides, akathisia, Parkinsonism, and dyskinesias (including tardive dyskinesia), Neuroleptic malignant syndrome and QTc Prolongation |

2.  The superintendent of OSH shall notify the Court if this court order should be altered as the result of changes in circumstances, including Defendant's response to the authorized medications.

3.  This order shall expire when Defendant's commitment to the custody of OSH is terminated under the provisions of ORS 161.370.

Signed: 12/14/2020 04:03 PM

Date Signed

Circuit Court Judge - Nan G. Waller

**Circuit Court Judge Nan G. Waller**

Case No: <u>19-CR-32657</u>

7

*Exhibit E*

| | Search documents in this case: | [ ] | Search |
|---|---|---|---|

## No. 21-5855

| | |
|---|---|
| Title: | **Jeremiah Kyle Blaber, Petitioner**<br>**v.**<br>**Oregon** |
| Docketed: | October 4, 2021 |
| Lower Ct: | Supreme Court of Oregon |
| Case Numbers: | (S068477) |
| Decision Date: | June 24, 2021 |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Aug 30 2021 | Petition for a writ of certiorari and motion for leave to proceed in forma pauperis filed. (Response due November 3, 2021)<br><br>**Motion for Leave to Proceed in Forma Pauperis   Petition   Appendix   Proof of Service** |
| Oct 22 2021 | Waiver of right of respondent Oregon to respond filed.<br><br>**Main Document** |
| Oct 28 2021 | DISTRIBUTED for Conference of 11/12/2021. |

| NAME | ADDRESS | PHONE |
|---|---|---|
| Attorneys for Petitioner | | |
| Jeremiah Kyle Blaber | 2600 Center St.<br>Salem, OR 97301 | |
| | | |
| Party name: Jeremiah Kyle Blaber | | |

# Conclusion

The petition for a writ of Habeas corpus should be granted.

Respectfully Submitted

Jeremy K. Blaber

Date: 11/17/21